IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARMONI MASUD JOHNSON,<br>Plaintiff | : <br> : <br> : | No. 3:18cv592 <br><br> (Judge Munley) |
| v. | : <br> : | |
| SGT. BIENKOSKI, et al.,<br>Defendants | : <br> : | |

## MEMORANDUM

Before the court is the report and recommendation ("R&R") of Magistrate Judge Martin C. Carlson, (Doc. 115), recommending that Defendant Officer Chuba's second motion for summary judgment (Doc. 97) be granted due to plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.A. § 1997e (West).  Plaintiff Armoni Masud Johnson has filed an objection to the R&R and this matter is ripe for disposition[1].  (Doc. 116).

**Background**

Plaintiff is incarcerated at SCI-Coal Township.  Per the operative second amended complaint, plaintiff alleges that he was housed on B-Block at SCI-Dallas on May 26, 2016.  (Doc. 35 at 3, ¶ 1).  On that date, plaintiff walked from

---

[1] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

his cell to the officers' station and requested to use the phone.  (Id. at ¶ 2).  An officer on duty, alleged to be Defendant Chuba, ignored plaintiff's request and confiscated the religious beads that plaintiff wore around his neck.  (Id. ¶¶ 3-8).  Plaintiff filed a grievance for return of his property and, per plaintiff, the prison denied the request without legitimate explanation.  (Id. at ¶¶ 9-10).  Plaintiff also alleges that Defendant Chuba and the other named defendants conspired to deprive him of his religious freedom, freedom of expression, and personal security. (Id. at ¶¶ 11-12). Plaintiff seeks monetary damages for violation of his constitutional rights[2]. (Id. at ¶ 13).

The court previously dismissed several other named defendants in this action.  On February 6, 2020, Judge Mariani adopted an R&R from Magistrate Judge Carlson and dismissed Defendants Josefowicz, Zakaraukas, Goyne, White, and SCI-Dallas. (Doc. 39).  The court directed the Clerk of Court to serve Defendants Ada, Bienkoski, Chuba and Devers. (Id.).  The Pennsylvania Department of Corrections ("DOC") was subsequently unable to identify Defendant Ada from plaintiff's averments regarding a teacher's aide at SCI-Dallas and did not accept service on that defendant's behalf. (Doc. 69 at 1, n. 1).

---

[2] The second amended complaint does not indicate the basis of plaintiff's cause of action against Defendant Chuba, but he initially filed suit indicating that he brought his claims pursuant to 42 U.S.C.A. § 1983 (West) ("Section 1983"). (Doc. 1).

The docket reflects no subsequent efforts by plaintiff to identify Defendant Ada or prosecute this action against this individual.

In their answer, Defendants Bienkoski, Chuba, and Devers raised an affirmative defense that plaintiff failed to exhaust his administrative remedies for the claims advanced in the second amended complaint. (Doc. 46). On April 26, 2021, these defendants filed a motion for summary judgment on the exhaustion issue. (Doc. 68). In an R&R dated June 14, 2021, Magistrate Judge Carlson recommended that summary judgment be granted in favor of Defendants Bienkoski and Devers. (Doc. 83). Magistrate Judge Carlson recommended, however, that a ruling be deferred as to Defendant Chuba, pending further development of the factual record. (*Id.*). Plaintiff objected and on April 8, 2022, Judge Mariani overruled the objections (Docs. 89, 91, 92, 96), adopted Magistrate Judge Carlson's R&R, and remanded the matter for further consideration. (Doc. 108).

Defendants filed a second motion for summary judgment on September 9, 2021 with regard to plaintiff's claims against Defendant Chuba[3]. (Docs. 97, 104). After review of the additional evidence, Magistrate Judge Carlson recommended that Defendant Chuba's second motion for summary judgment be granted on

---

[3] At that time, Judge Mariani had not yet addressed plaintiff's objections to the R&R regarding the first motion for summary judgment.

April 27, 2022 on the basis that plaintiff failed to exhaust his administrative remedies. (Doc. 115).

Plaintiff filed an objection to the R&R on May 6, 2022, (Doc. 116), which this court construes liberally[4]. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). In his objection, plaintiff argues that the magistrate judge failed to consider whether the grievance process was available to him because, after filing the grievance and during the appeals period, plaintiff was placed in administrative custody ("AC") and was under duress. (Id. at 2-4). Plaintiff further argues that the magistrate judge failed to consider the unavailability of these administrative remedies because SCI-Dallas staff members threatened and retaliated against him by placing him under more restrictive conditions, depriving plaintiff of his "ordinary firmness." (Id.).

Defendants responded with a brief in opposition to plaintiff's objections on May 13, 2022. (Doc. 121). On July 7, 2022, plaintiff filed an additional "affidavit," arguing that summary judgment should be denied due to SCI-Dallas's failure to respond to the related grievance within the time limits prescribed by DOC policies. (Doc. 125). Such an untimely response by the prison, plaintiff argues,

---

[4] In considering plaintiff's objection, Defendant Chuba goes unmentioned other than a passing reference. Rather, the objection takes the court on a tangential journey beginning and ending with discussion of plaintiff's other civil actions involving access to the courts and his belief that there is a larger conspiracy against him. Along the way, plaintiff intersperses disjointed arguments responsive to Magistrate Judge Carlson's R&R. Only the arguments responsive to the R&R are addressed herein.

made the administrative process unavailable.  (Id.)(citing Shifflett v. Korszniak, 934 F.3d 356 (3d Cir. 2019)).  To ensure this matter is fully considered on its merits, the court will consider plaintiff's "affidavit" as part of his objection, bringing this case to its present posture.

**Jurisdiction**

As this case is brought pursuant to Section 1983 for constitutional violations, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of Review**

**1. Reports and Recommendations**

When a party files objections to an R&R on a dispositive motion, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir.1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

2. **Motions for Summary Judgment**

Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible

6

evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

The fact that the non-moving party in this case is proceeding *pro se* does not relieve him of the obligation under Rule 56 to produce evidence that raises a genuine issue of material fact. See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) ("At the end of the day, [*pro se* litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")(citation omitted).

**Analysis**

Defendant Chuba seeks summary judgment based on plaintiff's failure to exhaust his administrative remedies.  "The PLRA states that no action shall be brought with respect to prison conditions under § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Shifflett, 934 F.3d at 364 quoting 42 U.S.C. § 1997e(a)) (internal quotation marks and brackets removed).

7

Mandatory exhaustion statutes like the PLRA foreclose judicial discretion. Ross v. Blake, 578 U.S. 632, 639 (2016).  As explained, "all inmates **must** [...] exhaust all available remedies[,]" with no exceptions for "special circumstances" or any judge-made, discretionary exclusions.  See id. at 641-42 (emphasis added); see also Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Ross, 578 U.S. at 638.  An administrative remedy is "available" when it is "capable of use for the accomplishment of a purpose" which "is accessible or may be obtained."  Id. at 642 (quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001)).

Administrative remedies are unavailable in three instances.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates."  Id. at 643 (citation omitted).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id. at 643-44.  As further stated, "[w]hen an administrative process is susceptible of multiple reasonable interpretations ... the inmate should err on the side of exhaustion[,] [b]ut when a

remedy is … essentially 'unknowable' – so that no ordinary prisoner can make sense of what it demands – then it is also unavailable." Id. at 644 (citations omitted).  Administrative remedies are also unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

Additionally, "[t]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)).

Not only do prisoners have a duty to exhaust in accordance with prison procedural rules, the prisons themselves must also "comply with the demands of the system they created." Shifflett, 934 F.3d at 365.  "[A]s soon as a prison fails to respond to a properly filed grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." Id.

9

Under the PLRA, inmates must comply with the rules and procedures of prison administrative systems and these requirements are drawn from the prison policies in question rather than from any free-standing federal law. Id. at 364 (citations omitted). In cases such as this, the exhaustion requirement requires the inmate to proceed through DOC grievance procedures. The DOC's Inmate Grievance System is governed by Administrative Directive 804 ("DC-ADM 804"). (Doc. 104, Exh. B, Decl. Attach. 1). DC-ADM 804 requires a prisoner to present his grievance to the Facility Grievance Coordinator for "initial review" within fifteen (15) days after the events leading to the grievance. (See id. at 1-2). Per this policy, "the response shall be provided to the inmate" from the designated Grievance Officer "within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System[.]" (Id. at 1-7, ¶ 5g). An inmate may appeal an initial review response/rejection to the Facility Manager within fifteen (15) days from the date of the initial review/rejection. (See id. at 2-1). To fully exhaust, an inmate who is dissatisfied with the disposition of an appeal to the Facility Manager must then file an "appeal to final review" to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). Id. at 2-4 to 2-6.

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden County, 728 F.3d. 265, 268

(3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

### 1. Exhaustion Through DC-ADM 804 Procedures

Defendant Chuba advances evidence that plaintiff failed to appeal the relevant grievance under the processes set forth in DC-ADM 804. The record reflects that plaintiff filed Grievance 627812 concerning the incident with Defendant Chuba. (Doc. 104-2). The Facility Grievance Coordinator signed the grievance on May 31, 2016, advising plaintiff that it was received and would be processed in accordance with DC-ADM 804. (Id.). The grievance was assigned to Defendant Josefowicz. (Id.). His denial of the grievance, dated June 20, 2016, indicates that plaintiff did not have a religious necklace on file with SCI-Dallas. Additionally, the necklace in question was made using altered items, and the officer was, by policy, correct in confiscating the necklace, per Defendant Josefowicz's response. Id.

Defendant Chuba also submitted a declaration from Dorina Varner, the Chief Grievance Officer of SOIGA. (Doc. 104-3, ¶ 1). Ms. Varner's declaration

indicates that she reviewed the DOC's Automated Inmate Grievance Tracking System for any grievances filed by plaintiff related to the confiscation of religious beads on or after May 26, 2016. (Id. at ¶ 22). Per Ms. Varner, her review found only Grievance 627812, which she attests was received on May 31, 2016. (Id. at ¶ 23). Ms. Varner's declaration also states that Grievance 627812 "was never appealed to the Facility Manager let alone to SOIGA." (Id. at ¶ 24).

Defendant Chuba further relies on plaintiff's deposition testimony in support of his motion. Plaintiff testified specifically regarding Grievance 627812 as follows:

> Q.   Thank you. And did you appeal that all the way through to [SOIGA] ?
>
> A.   Again, once I -- this was in May 26.  This as a couple days before I was put in administrative custody.  So no more than two weeks later I was put on AC status. And while I was on AC status, this same person, I wrote a request form to him, and he responded, but I didn't like the response that I received from him. And me sending things outside the facility I believe was fruitless ...
>
> To answer your question did I exhaust the grievance? I was exhausted in lockup by then by all the stuff that happened to me so, you know, I didn't contact anybody outside of the facility. I said, okay, if you don't want to let me send my stuff home at the least, then I'm just going to file a complaint against you. Because usually – and these grievances is not feared at all because these people work with each other.  They're never going to side – usually they don't side with inmates. They always side with each

> other. And I felt like it ain't no win here.  So therefore
> later on down the line I'm going to just put it in a civil
> action.

(Doc. 97-2, Dep. of A.M. Johnson 03/03/2021 at 35:19-36:16).

Despite plaintiff's prolix objection to the R&R, he does not dispute that he failed to properly exhaust his remedies through DOC policies and procedures.

### 2. Availability of Administrative Remedies

Once a defendant has established that an incarcerated person failed to exhaust administrative remedies, "the onus falls on the inmate to show that such remedies were unavailable to him." Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018)(citation omitted).  Plaintiff's objection and "affidavit" raise various arguments that the grievance process was unavailable to him due to his placement on AC status and because of threats and retaliation from SCI-Dallas officials. (Doc. 117 at 2-4).  Plaintiff also argues that Defendant Josefowicz failed to respond within the requisite time established in DCM-804. (Doc. 125).  The court disagrees.

As noted above, a prison grievance process is unavailable and may be deemed exhausted in three circumstances: "(1) when the remedy operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) when it is so opaque that it becomes, practically speaking, incapable of use; and (3) when prison administrators thwart inmates

13

from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Hardy v. Shaikh</u>, 959 F.3d 578, 584 (3d Cir. 2020)(quoting <u>Ross</u>, 578 U.S. at 643-44)(internal quotations omitted).

Here, plaintiff offers nothing to indicate that the administrative process was unavailable because officers were unwilling or unable to provide relief or that the administrative process was so opaque that it was incapable of use. Rather, plaintiff's sworn testimony reflects that he understood his administrative remedies in the prison system at all relevant times. (Doc. 97-2, Dep. of A.M. Johnson 03/03/2021 at 22:9-23:11, 24:22-25:9, 26:13-28:11, 35:19-40:15). Plaintiff also testified that he filed multiple grievances while in administrative custody at SCI-Dallas related to food and commissary issues and several of his issues were resolved. (<u>Id.</u> at 39:10-49:14).

Plaintiff also offers nothing to support his arguments that the administrative process was unavailable due to machination, misrepresentation, or intimidation other than bald statements and reference to case law. "To defeat a failure-to-exhaust defense, an inmate must show (1) that the threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." <u>Rinaldi</u>, 904 F.3d at 269. This is an objective-subjective test. <u>Id.</u>

14

Here, plaintiff was not deterred from participating in the grievance process.

His repeated references to an alleged wide-ranging conspiracy against him by

officials at SCI-Dallas are not substantiated by the record. Rather, the

uncontroverted evidence reflects that plaintiff was placed in administrative

custody and then transferred to another prison because Defendant Devers, a

machinist instructor at SCI-Dallas, served on a jury in a March 2016 state

criminal trial where plaintiff was found guilty[5]. (Docs. 97-2, Dep. of A.M. Johnson

03/03/2021 at 5:23-12:21, 97-3). Plaintiff's arguments about feeling threatened

by grievance responses also do not hold up against this record. For example,

Defendant Josefowicz's response to Grievance 627812 cannot objectively be

construed as a threat, let alone a sufficiently serious threat. Defendant

Josefowicz's response merely advises plaintiff that he was not complying with

prison policy in wearing beads purposed from altered items and that plaintiff

avoided a misconduct through the discretion of the officer. (See Doc. 104-2).

Furthermore, plaintiff has offered no evidence to support his theory that

Defendant Josefowicz, Defendant Chuba, or any of the other dismissed

defendants retaliated against him or were responsible for his transfer to AC

status after filing of a grievance. Likewise, plaintiff has offered no evidence that

---

[5] The evidence also reflects that plaintiff represented himself in that trial with standby counsel and was aware that correctional officers were in his jury pool. (Doc. 97-2, Dep. of A.M. Johnson 03/03/2021 at 8:6-22, 12:20-21).

15

he was subjectively deterred from filing grievances. Per plaintiff's own testimony

above, he continued to file grievances related to his treatment in administrative

custody.

Finally, the evidentiary record as to Grievance 627812 reflects that

Defendant Josefowicz responded to this grievance in a timely manner under DC-

ADM 804. As noted above, the applicable prison policy requires the Grievance

Officer to respond to grievances within fifteen (15) working days after their entry

in the Automated Inmate Grievance Tracking System. (Doc. 104-3, Decl. Attach.

1 at 1-7, ¶ 5g). Per Ms. Varner, Grievance 627812 was received on May 31,

2016. (Id. at ¶ 23). Defendant Josefowicz denied Grievance 627812 during

initial review on June 20, 2016. (Doc. 104-2). For the purposes of DC-ADM 804,

"working days" are "Monday through Friday, excluding state holidays." (Doc.

104-3, Decl. Attach. 1, "Glossary of Terms"). Reviewing the 2016 calendar,

Defendant Josefowicz's response was issued twenty-one (21) calendar days

after it was received but three (3) Saturdays and three (3) Sundays would be

excluded under the "working days" definition. Thus, Defendant Josefowicz

issued the response on the fifteenth day making it timely under DC-ADM 804.

Upon review of the record, plaintiff did not fully and properly exhaust his

administrative remedies regarding the confiscation of his property prior to filing

this action against Defendant Chuba. The undisputed evidence demonstrates

16

plaintiff failed to appeal to the Facility Manager or to SOIGA under DC-ADM 804.

Moreover, in his objection, plaintiff offers no evidence to suggest that the actions

of Defendant Chuba or anyone at SCI-Dallas prevented him from exercising his

right to file and appeal grievances within the prison system prior to filing a civil

action.  Mere assertions without any details to support such claims are

insufficient to create a genuine issue of material fact. See Paladino v. Newsome,

885 F.3d 203, 208 (3d Cir. 2018).  Plaintiff has not satisfied his burden to

demonstrate that exhaustion was unavailable under the case law, and,

accordingly, this court will overrule plaintiff's objection, adopt the report and

recommendation of Magistrate Judge Carlson, and grant summary judgment in

favor of Defendant Chuba.

### 3. Additional Matters

"[A] district court possesses inherent powers that are 'governed not by rule

or statute but by the control necessarily vested in courts to manage their own

affairs so as to achieve the orderly and expeditious disposition of cases.'" Dietz v.

Bouldin, 579 U.S. 40, 45, (2016)(quoting Link v. Wabash R. Co., 370 U.S. 626,

630–631 (1962)).

On May 9, 2022, subsequent to the objection to the R&R addressed in this

memorandum, plaintiff filed a motion to consolidate access that was captioned

with Third Circuit Court of Appeals docket numbers. (Doc. 117).  Additionally,

17

plaintiff filed a motion to recall mandate and/or Rule 60(b) motion on July 20, 2022 referencing his other civil matters. (Doc. 127).  Plaintiff also filed an "omnibus request for summary judgment on the pleadings" with five (5) docket numbers on the caption (Doc. 138).  Other filings styled as motions, briefs, letter briefs, declarations, affidavits, exhibits, submissions, and supplements from plaintiff have been pending on the docket since the R&R was issued. (Docs. 122-126, 128-134, 139). All these submissions address multiple matters in different cases.  Additionally, in each of these filings, plaintiff attempts to link this action to other actions pending or once pending before other judges in this district or on appeal.  The averments in these motions appear to be grounded in allegations or rulings in plaintiff's other cases.  As such, to the extent these filings can be construed as motions, they will be denied.

Finally, the only remaining defendant in this matter is Defendant Ada, who has not been identified or served as this litigation approaches its sixth year. Plaintiff's allegations against Defendant Ada in the second amended complaint can only be construed as allegations against a Doe defendant. (See Doc. 35 at 3)(averring that "Teacher aid Ada" was employed at SCI-Dallas in the law library between March 17, 2016 and March 31, 2016).  His deposition testimony confirms that placeholder designation.  (See (Doc. 97-2, Dep. of A.M. Johnson 03/03/2021 at 20:23-22:17).

"Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed." Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998)(quoting Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 36 (E.D. Pa. 1990). A plaintiff must identify a Doe defendant because, if discovery yields no identities, fictitious parties must eventually be dismissed. See id. (citing Scheetz, 130 F.R.D. at 37).

Moreover, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. Courts in the Third Circuit have used Rule 21 to exclude Doe parties from an action under appropriate circumstances, such as the failure to identify individuals during discovery. See King v. Mansfield Univ. of Pennsylvania, No. 1:11-CV-1112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014)(Brann, J.)(collecting cases). "Rule 21 empowers courts to police the litigation's cast of characters." Avenatti v. Fox News Network LLC, 41 F.4th 125, 130 (3d Cir. 2022).

As explained, an action cannot be maintained solely against a Doe defendant after all other defendants are dismissed:

> Until Doe is identified, all actions that anyone takes in this case are *ex parte*. This was not a great problem when other defendants sharing Doe's interests could effectively represent Doe. Now, though, the sole defendant has not received the complaint, appeared by counsel at depositions, or argued his case through motions or in person. It is quite possible that Doe has actual notice of at least some of the proceedings in this case. But this differs

by far from the type of notice that comports with the requirements of due process.

Scheetz v. Morning Call, Inc., 747 F. Supp. 1515, 1534 (E.D. Pa. 1990), aff'd, 946 F.2d 202 (3d Cir. 1991); see also 1535, n. 31 (finding that the Rules of Civil Procedure do not contemplate a plaintiff proceeding without a defendant except in the most extraordinary circumstances).

Here, Plaintiff enjoyed the opportunity to conduct meaningful discovery to identify Defendant Ada. He filed a motion to compel that resulted in the production of interrogatory answers. (Docs. 59, 64). Plaintiff also attached some of defendants' responses to his interrogatories in his various scattershot filings, but none of his questions of defendants pertained to Defendant Ada, at least of the ones provided to the court. (Doc. 138-1 at 6-11). Plaintiff was also questioned by counsel for defendants about details that might lead to Defendant Ada's true identity. This process proved unfruitful. Nothing suggests now that the identification of Defendant Ada is likely, forthcoming, or even achievable almost eight years from the date of the alleged incident. Thus, with her actual identity still unknown and no other remaining defendants remaining in the case, the court will also exercise its discretion under Rule 21 and dismiss Defendant Ada.

## CONCLUSION

For the reasons set forth above, the court will overrule plaintiff's objection (Doc. 116) and affidavit construed as an objection. (Doc. 125). The court will adopt Magistrate Judge Carlson's R&R (Doc. 115). Defendant Chuba's second

motion for summary judgment (Doc. 97) will be granted.  Plaintiff's other

subsequent filings (Docs. 117, 122-134, 138-139) will be denied to the extent

they can be construed as motions applicable to this case.  Plaintiff's claims

against Defendant Ada will also be dismissed under Rule 21 and the Clerk of

Court will be directed to close this case.  An appropriate order shall issue.

Date:  12/13/23

**JUDGE JULIA K. MUNLEY**
**United States District Court**